

| | |
|---|---|
| **Office of the New York State**<br>**Attorney General** | **Letitia James**<br>**Attorney General** |

December 17, 2024

Catherine O'Hagan Wolfe (via ECF)
Clerk of Court
United States Court of Appeals for the Second Circuit
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re: *Variscite NY Four, LLC v. New York State Cannabis Control Board*,
No. 24-384

Dear Ms. Wolfe:

  I represent defendants-appellees in the above-captioned appeal. I write to make the Court aware of an order of New York Supreme Court, Albany County, entered December 12, 2024, which enjoins defendants-appellees New York State Cannabis Control Board and New York State Office of Cannabis Management from processing a) any Conditional Adult-Use Retail Dispensary (CAURD) license applications in which the applicant did not submit proof of a municipally noticed secured location on or before November 17, 2023, and b) any other provisional adult-use license applications. A copy of that order is appended to this letter.

  While defendants-appellees are currently reviewing all pending licenses to identify which are impacted by this preliminary injunction, it is already clear that the order prohibits defendants-appellees from processing a substantial number of license applications from CAURD applicants, the November Queue, and the December Queue. The preliminary injunction prevents defendants-appellees from processing plaintiffs-appellants' applications because they did not apply with a secured location, and thus would only initially be able to receive a provisional license. In addition, while the preliminary injunction remains in effect, defendants-appellees will not be able to complete the process of reviewing applications and granting licenses to all

2

applicants on the November Queue, thus preventing them under current policy from beginning to review the December Queue, on which plaintiffs-appellants appear.

    Respectfully submitted,

    */s/ Alexandria Twinem*
    Alexandria Twinem
    Assistant Solicitor General
    (518) 776-2042

cc:    All parties (via ECF)

STATE OF NEW YORK
SUPREME COURT　　　　　　　　　　　　　　　　　　　ALBANY COUNTY
In the Matter of the Application of
ORGANIC BLOOMS, LLC, NIAGARA NUGGET,
LLC, BLACKMARK, LLC, and WINDWARD, LLC,

　　　　　　　　　　　Petitioners,

　　　　　　　　　　　　　　　　　　　　　　　　**Decision & Order**

For a Judgment Pursuant to Article 78 of the CPLR
　　　　　　　　　　　　　　　　　　　　　　　　**Index No.: 904497-24**

　　　　-against-

NEW YORK STATE CANNABIS CONTROL
BOARD and NEW YORK STATE OFFICE OF
CANNABIS MANAGEMENT,

　　　　　　　　　　　Respondents.
_____

Supreme Court, Albany County, Special Term
Return Date: July 11, 2024
Oral Argument: October 17, 2024

Present: Hon. Sharon A. Graff, JSC

Appearances:　RUPP PFALZGRAF, LLC
　　　　　　　Attorney for Petitioners
　　　　　　　1600 Liberty Building
　　　　　　　Buffalo, New York 14202
　　　　　　　By:　Marc A. Romanowski, Esq.
　　　　　　　　　 Margaret J. Drzewiecki, Esq.

　　　　　　　LAW OFFICE OF THOMAS G. SPANOS
　　　　　　　Attorney Petitioners
　　　　　　　505 Ellicott Street, Suite 205
　　　　　　　Buffalo, New York 14203
　　　　　　　By: Thomas G. Spanos, Esq.

　　　　　　　HON. LETITIA JAMES
　　　　　　　Attorney General of New York State
　　　　　　　Attorneys for Respondent
　　　　　　　Department of Law
　　　　　　　The Capitol
　　　　　　　Albany, New York 12224
　　　　　　　By: Assistant Attorney General Ryan W. Hickey, Esq.

1

**Graff, J.:**

The petitioners herein are four among thousands in the initial pool of applicants for adult-use cannabis retail dispensary licenses. They commenced this proceeding to challenge actions respondents have taken which petitioners contend were arbitrary and in excess of the statutory authority granted to them under the Marihuana Regulation and Taxation ACT ("MRTA"). Specifically, petitioners challenge respondents' promulgation of a process whereby certain applicants could apply for a provisional license without meeting all the criteria needed for a non-provisional license. Petitioners seek judgment, *inter alia*, declaring the challenged actions unlawful. They also seek a preliminary injunction enjoining the review of applications for provisional licenses pending the outcome of this proceeding. Respondents oppose petitioners' application for a preliminary injunction and move to dismiss the petition on the grounds that the claims asserted therein are not viable. Respondents' motion to dismiss is denied and petitioners' application for a preliminary injunction is granted for the reasons discussed herein.

BACKGROUND

The MRTA was enacted on March 31, 2021, legalizing the retail sale of cannabis in New York, subject to the licensure requirements and other regulatory oversight as set forth in the accompanying provisions of New York Cannabis Law. Respondents New York State Cannabis Control Board ("CCB") and the New York State Office of Cannabis Management ("OCM" and, collectively, "respondents") were created and established pursuant to Cannabis Law § 7 and § 8. The CCB is authorized to make regulations governing the licensing process for retail dispensaries (See generally, Cannabis Law § 10, § 64). The OCM is charged with the duty of reviewing applications for licenses and does so under the supervision of the CCB (Cannabis Law § 11).

One of the goals of the MRTA is to advance social and economic equity (Cannabis Law § 2). To that end, the Cannabis Law expressly authorizes the CCB to prioritize "consideration of applications by applicants who are from communities disproportionately impacted by the enforcement of cannabis prohibition or who qualify as a minority or women-owned business, distressed farmers, or service-disabled veterans" ("SEE Applicants") (Cannabis Law § 87 [1]). While SEE Applicants are expressly entitled to prioritization in the application process, Cannabis Law § 10 [19] mandates that "the initial adult-use cannabis dispensary application period shall be opened for all applicants *at the same time*" (Emphasis added). The Cannabis Law requires that certain pre-conditions be met by applicants for adult-use ("AU") retail dispensary licenses. As relevant here, Section 76 [1] of the Cannabis Law requires that at least "thirty days … before filing an application for licensure", all AU applicants must "notify the municipality in which the premises is located of such applicant's intent to file such an application" (hereinafter "Municipal Notice Requirement"). It is undisputed that this applies to all adult-use retail dispensary applicants. To fulfill this requirement, applicants must first have a secured location for their proposed dispensary (Cannabis Law § 76 [1]). In other words, the foregoing provisions of the Cannabis Law require applicants to do two things at least 30 days *prior* to filing their applications: (1) secure a location, and (2) provide notice to municipality in which the proposed retail dispensary is located.

In 2022, CCB and OCM promulgated regulations to carry out the purposes of the Cannabis Law. Among them, and at issue here, was the creation of a Conditional Adult Use Retail Dispensary ("CAURD") program (9 NYCRR § 116.1, *et seq.*). The CUARD program was designed to further the social justice goals of the Cannabis Law by creating a sub-category of SEE applicants hereinafter referred to as "CAURD Applicants" and creating a two-step application

process for them.[1] In the first step, CUARD Applicants are permitted to file their application for an Adult Use Retail Dispensary License without first having to secure a location and fulfill the Municipal Notice Requirement (9 NYCRR § 116.2 - § 116.4). CUARD Applicants who score high enough are granted a provisional license. (NYSCEF Doc. No. 18, pp. 2 -4) A provisional license does not permit CUARD applicants to open a retail dispensary (*Id.*) Rather, those granted provisional licenses are then required to move to the next step of the application process wherein they must secure a location and give notice to the appropriate municipality prior to final review of their applications (*Id.*) If approved, CUARD applicants are entitled to an Adult Use Retail Dispensary License (*Id.*)

CCB and OCM opened the window for the first CUARD Applicants to take the first step and apply for provisional licenses from August 25, 2022 through September 26, 2022 ("CUARD Applicants"). According to petitioners, approximately 900 applications were filed during this period.

More than one year later, on October 3, 2023, CCB and OCM opened the window for the first wave of applications for all AU license types. This application period for AU retail dispensary licenses was broken into two pools. The first pool was for applicants who already had proof of control of their proposed location and had satisfied the Municipal Notice Requirement. The window for applicants in this pool was open from October 4, 2023 through November 17, 2023

---

[1] The distinguishing feature of eligibility for CAURD Applicants is that they be "justice involved" as defined by 9 NYCRR § 116.4 [2] [i] [a] – [c] which provides, in pertinent part, that a justice involved individual is one who, prior to March 31, 2021, "[a] was convicted of a marihuana-related offense in New York State …; [b] had a parent, legal guardian, child, spouse, or dependent who was convicted of a marihuana-related offense …; or [c] was a dependent of an individual who was convicted of a marihuana-related offense in New York State … [.]" (§116.4. [2] [i] [a] – [c]).

4

("November Window"). According to petitioners, approximately 1,799 applications were filed during this period.

The second pool permitted applicants who already had proof of control of their proposed location and who had satisfied the Municipal Notice Requirement, but also permitted those who had not yet met these requirements to apply for a provisional license and follow the two-step process akin to the CUARD program ("Provisional License Applicants"). The window period for applicants in this pool opened on November 17, 2023 and closed on December 18, 2023 ("December Window"). According to petitioners, approximately 3,789 applications were filed during this period.

When the November Window closed, OCM used a computer program to randomly sequence the applications to create the order in which they would be reviewed. It did the same when the December Window closed. Petitioner Organic Blooms, LLC applied during the November Window and is positioned at number 2117 in the November queue. Petitioner Niagara Nugget, LLC applied during the December Window and is positioned at number 2686 in the December queue. Blackmark, LLC, applied during the November Window and is positioned at number 1801 in the November queue. It also filed a December Application and is positioned at number 1366 in the December queue. Petitioner Windward Management, LLC, applied during the November Window and is positioned at number 1038 in the November queue. Per the parties' submissions, each of the petitioners filed for non-provisional AU retail dispensary licenses and each had proof of control over their proposed locations and were in compliance with the Municipal Notice Requirement at the time of their applications.

As of the date of their most recent submissions, none of petitioners' applications had been reviewed. However, during oral argument held on October 17, 2024, petitioners' counsel advised

5

that petitioner Blackmark, LLC ("Blackmark"), a November Window applicant, had lost its proximity protection to a CAURD Applicant who did not secure their location or comply with the Municipal Notice requirement until after its provisional license was approved. What is more, per petitioners' counsel, Blackmark cannot apply for a waiver of the proximity restrictions unless and until its application is denied. Notably, petitioners' counsel advised that Blackmark is an SEE Applicant, the very category of applicants who the Cannabis Law intended to promote and advance.

### PETITIONERS' CONTENTIONS

The crux of petitioners' claim is that pursuant to Cannabis Law § 76, *all* AU retail dispensary applicants are required to have a secured location and to give municipal notice at least thirty days before they can file an application for licensure. As such, they argue that respondents acted arbitrarily and in excess of their authority by "waiving" the secure location and Municipal Notice Requirement for CUARD Applicants and Provisional License Applicants in the December Window. Further, they argue that respondents acted arbitrarily and in excess of their authority by permitting CUARD Applications to be filed in 2022 insofar as Cannabis Law § 10 [19] expressly states that "the initial adult-use cannabis retail dispensary application period *shall be opened for all applicants at the same time*" (Emphasis added).

Petitioners argue that respondents conduct in "waiving" the secure location and Municipal Notice Requirement for CUARD Applicants and December Window Provisional License Applicants is causing them irreparable harm. First, petitioners argue that the volume of CUARD Applicants and Provisional License Applicants in the December Window has resulted in a flood of applications, creating a needless backlog which has prevented respondents from reviewing the November Window applicants who satisfied the requirements of Cannabis Law § 76. Second,

6

petitioners point out that under the existing regulations, absent a waiver, retail dispensaries cannot be located within specified distances of other retail dispensaries (9 NYCRR § 119.4 []). They argue that despite having to carry the financial burden of their secured locations, applicants such as themselves, stand to forfeit the proximity protection of their secured locations to CUARD and other Provisional License Applicants who are permitted to designate a proposed location after their provisional license is approved. As such, petitioners seek a preliminary injunction enjoining respondents from reviewing applications by any CUARD applicants and other Provisional License Applicants.

RESPONDENTS' CONTENTIONS

Respondents maintain that the petitioners' claims are fatally flawed in that they are based on the misapprehension that the secure location and Municipal Notice Requirement have been waived for CUARD and Provisional License Applicants. In this regard, they point out that CUARD and Provisional License Applicants who are granted provisional licenses must satisfy the secure location and Municipal Notice Requirement before applying for final licensure. As such, respondents argue that the two-step application process available to CUARD Applicants and Provisional License Applicants does not cause any harm to petitioners. Further, respondents argue that petitioners cannot show any irreparable harm arising from delays in the review of the application process based upon loss of market share or "first mover" advantage because the retail cannabis market in New York is already populated with licensed retail dispensaries.

RESPONDENTS' MOTION TO DISMISS

In deciding respondents' motion to dismiss, the standard to be applied is whether the allegations in the petition state legally cognizable claims (*Matter of Northway 11 Communities v Town Bd. of Town of Malta*, 300 AD 786, 787 [3d Dept 2002]). In so doing, the Court should

assume that the petition's factual allegations are true and view them in the light most favorable to petitioners (*Id.*) Viewing it in this light, the petition sufficiently states a claim for relief under CPLR Article 78 and for declaratory judgment.

As an initial matter, the Court recognizes that the blanket assertion that respondents "waived" the secured location and Municipal Notice Requirements for CUARD and other Provisional License Applicants is somewhat of a mischaracterization. As respondents point out, CUARD and other Provisional License Applicants must ultimately comply with these requirements to obtain a full license to operate an adult-use retail dispensary. Nevertheless, the petition and supporting papers adequately asserts that the secured location and Municipal Notice Requirements are mandatory pre-requisites to *filing* an application (Cannabis Law § 76 [1]) and that respondents waiver of these pre-requisites for CUARD and other Provisional License Applicants was arbitrary and in excess of the authority granted to respondents under the Cannabis Law. Likewise, the allegations that the CUARD program violated the requirement of Cannabis Law § 10 [19] that the initial period for adult-use dispensary licenses be opened to all applicants at the same time sufficiently state a claim for relied under CPLR Article 78. For the same reasons, the petition adequately states a claim for declaratory judgment under CPLR § 3001. Accordingly, respondents' motion to dismiss is denied.

PETITIONERS' REQUEST FOR A PRELIMINARY INJUNCTION

Preliminary injunctions are drastic forms of relief and thus require those seeking one to demonstrate that (1) they are likely to succeed on the merits of at least one of their claims, (2) that absent an injunction, they face irreparable harm, and (3) that the balance of equities lie in their favor (*Petry v Gillon*, 199 AD3d 1277 [3d Dept 2021]). Moreover, the decision to grant or deny the injunction generally remains within the sound discretion of the court (*Id*). Here, petitioners

seek to enjoin respondents from processing CUARD and other Provisional License Applications pending the outcome of this proceeding. As discussed below, they have met their burden as movants and are entitled to a preliminary injunction which will be limited in scope.

Petitioners have satisfied the first prong of this test with respect to their claims that respondents' actions in permitting CUARD Applicants to file their initial applications approximately one year before all other initial adult-use applicants were permitted to do so. "However facially broad, a legislative grant of authority must be construed, whenever possible, so that it is no broader than that which the separation of power doctrine permits" (*Boreali v Axelrod*, 71 NY2d 1, 9 [1987]). Here, Article 2 of the Cannabis Law delegates broad powers to respondents, including but not limited to rule-making authority, to administer the process for application and licensure of cannabis businesses in the State. Notwithstanding this broad authority, the Cannabis Law also contains the express requirement that the initial period for adult-use dispensary licenses be opened for all applicants "*at the same time*" (Cannabis Law § 10 [19] [emphasis added]).

Respondents undoubtedly had the authority, and indeed, a statutory mandate to promulgate regulations and processes that prioritize SEE applicants (Cannabis Law § 87 [1]). It is also readily apparent that the CUARD program was designed to advance the MRTA's social equity and justice goals. As respondents point out, while the provisional license does not authorize operating activities, it does "provide assurances to stakeholders, like investors, landlords, and lenders, that the application satisfies certain conditions necessary and relevant to the license type sought" and thereby "may help applicants secure a premise or funding for their cannabis operation before a final license is issued." (NYSCEF Doc. No. 34, p. 6). Nevertheless, the provisions of Cannabis Law § 10 [19] *vis-à-vis* the initial application period are unambiguous, giving rise to an "irrefutable inference ... that what is omitted or not included was intended to be omitted or excluded" (*Matter

9

of *Raynor v Landmark Chrysler*, 18 NY3d 48, 56 [2011] [internal quotation marks and citation omitted]). There being no language in the Cannabis Law to carve out an exception to the requirement that the initial period for adult-use retail dispensary licenses be opened for applicants at the same time, it follows that petitioners are likely to succeed on their claim that respondents acted arbitrarily and exceeded their authority by opening the application window for CUARD applicants approximately one year before other adult-use retail dispensary applicants. Further, because respondents' actions in this regard conflict with the plain language of Cannabis Law § 10 [19], they likely crossed the line "between administrative rule-making and legislative policy-making" (*Boreali v Axelrod*, 71 NY2d 1, 11 [1987]). For the same reasons, petitioners have demonstrated that they are likely to succeed on their claims that respondents acted arbitrarily and in excess of their authority by waiving the pre-requisite that applicants have a secured location and satisfy the Municipal Notice Requirement for CUARD and other provisional license applicants.

As for irreparable harm, petitioners argue that, absent an injunction, they face the loss of "first mover advantage" and exclusion from the retail cannabis market. Separately, petitioners argue that permitting respondents to process CUARD and other provisional license applications will expose them to the risk of losing proximity protection for their secured locations.

Turning first to petitioners' market share/first mover advantage arguments, the MRTA's legalization of, *inter alia*, the retail sale of cannabis products in New York State, has plainly created a new market. As petitioners point out, courts in this State and elsewhere have recognized that the loss of market share and/or the advantage of being a "pioneer" in an emerging market may constitute irreparable harm (*Sylmark-Holdings Ltd. v Silicone Zone Int'l Ltd.*, 5 Misc3d 285, 299 [Sup. Ct., New York Co. 2004]; See also, *NPG, LLC v City of Portland*, 2020 U.S. Dist. LEXIS 146958, at *28 [D. Me. Aug. 14, 2020]). Even so, petitioners' market share/first mover advantage

10

argument is somewhat attenuated. While the total number of initial licenses respondents intend to grant is opaque on the present record, it is undisputed that the number of applicants in the November Window alone – approximately 1800 - far exceeds the number of initial licenses respondents intends to grant. Thus, even if respondents had not engaged in the challenged conduct, petitioners' ability to obtain a license as a part of the initial wave of applicants would be far from guaranteed. Standing alone, petitioners' market share / first-mover advantage claims might not be enough to carry the day in terms of irreparable harm.

As noted, however, petitioners also point to the risk of loss of the proximity protection of their secured locations and thus being "ousted" from those locations by CUARD and other provisional license applicants who are permitted to designate a secured location after their provisional license has been granted. The harm petitioners' face arises from the fact that Part 119 of the AU regulations impose minimum distance requirements which, as relevant here, serve to limit the number of AU retail dispensaries that can operate within a geographic area (See, 9 NYCRR § 119.4 [a]).[2] As already discussed, petitioners had municipally notified secured locations in place when they filed their respective applications during the November Window and December Window. Respondents acknowledge CUARD Applicants were given until the close of the December Window to submit proof of a secured location. Similarly, December Window provisional license applicants were not required to submit municipally notified secured locations with their applications.

---

[2] Specifically, Section 119.4 [a] provides that, absent a waiver that "[n]o retail dispensary license or microbusiness license shall be granted for any premises which shall be: [1] within a 1,000-foot radius of … any other premises for which a retail dispensary license or microbusiness license has been issued, in a municipality having a population of 20,000 or more …, or [2] within a 2,000-foot radius of … any other premises for which a retail dispensary license or microbusiness license has been issued …[.]" (§ 119.4 [a], [1], [2]).

11

The problem, as petitioners point out, is that respondents' review of the applications by CUARD provisional license holders has proceeded in tandem with the applications submitted by non-provisional AU applicants such as petitioners. In so doing, respondents have set up a scenario where a CUARD provisional license holder's belated designation of a secured location would be too close to a non-provisional license applicant's previously designated secured location and render the non-provisional license applicant's secured location unacceptable under § 119.4 [a].

The harm arising from the loss of proximity protection is far from speculative. In fact, as petitioners point out, the State's own audit of the application and licensure process concluded that applicants were suffering this very harm (NYSCEF Doc. No. 46, p. 13).[3] Moreover, at oral argument, petitioners' counsel represented that a CUARD applicant designated a location too close to Blackmark's secured location and that Blackmark must now wait for their application to be denied before they can apply for a waiver of the proximity requirements. The irreparable nature of this harm exacerbates the loss market share/first mover advantage petitioners face as a result of respondents' actions. As such, petitioners have demonstrated that they face imminent, irreparable harm above and beyond any economic loss that is compensable by money damages alone (*Family-Friendly Media, Inc. v Recorder Tel. Network*, 74 AD3d 738, 739 [2nd Dept 2010]).

Finally, the balance of equities weigh in favor of petitioners in that the harms they face absent an injunction is decidedly greater than the harm to respondents or the public in general if a narrowly tailored injunction is granted (*Fischer v Deitsch*, 168 AD2d 599, 601 [2nd Dept 1990]). According to petitioners' reply papers, there are approximately 340 CUARD applications that have yet to be approved or denied. It is safe to assume that some of the 3,789 applications filed during

---

[3] The audit was ordered by Governor Hochul and conducted by Office of General Services Commissioner Jeannette Moy, who issued the report of her findings on May 8, 2024 ("Moy Report").

12

NYSCEF DOC. NO. 50

INDEX NO. 904497-24
RECEIVED NYSCEF: 12/12/2024

the December Window sought provisional licenses, although that number is not known. The only discernable harm from enjoining respondents from processing the CUARD and other provisional license applications is a delay in review of *those* applications. Any harm from the delay is tempered by the fact that CUARD and provisional license applicants are not carrying the burden of maintaining a secured location. A preliminary injunction will not delay the review of 1,799 non-provisional AU applications filed during the November Window and any non-provisional applications filed during the December Window. A preliminary injunction will not delay the grant of licenses to qualified non-provisional applicants and therefore will not deprive the public of access to AU retail dispensaries. Further, it will not interfere with respondents' ability to prioritize non-provisional SEE applicants. In sum, the harm petitioners will endure absent a preliminary injunction far outweighs the harm to respondents and the public in general might face if one is granted. Accordingly, it is hereby

ORDERED that respondents' motion to dismiss the petition is denied; and it is further

ORDERED that petitioners motion for a preliminary injunction is granted to the extent that pending the outcome of this proceeding, respondents are enjoined from processing CUARD applications in which the applicant did not submit proof of a municipally noticed secured location on or before November 17, 2023 and are enjoined from processing any other provisional AU applications; and it is further

ORDERED that a conference to set the schedule for submission of respondents' answer will be held on **December 18, 2024 at 2:30 p.m.** by Microsoft Teams.

This shall constitute the Decision and Order of the Court. The original Decision and Order is being filed with the Albany County Clerk's Office via NYSCEF. The signing of this Decision

and Order shall not constitute entry or filing under CPLR § 2220. Counsel is not relieved from the applicable provisions of that rule regarding notice of entry.

**SO ORDERED.**

Dated: 12/12/24
Albany, New York

ENTER,

_____
SHARON A. GRAFF, JSC

Papers considered:

1. Notice of Petition dated May 9, 2024;
2. Petition dated May 9, 2024;
3. Affirmation of Thomas G. Spanos, Esq. dated May 9, 2024 with Exhibits A-D;
4. Petitioners Memorandum of Law in Support of Petition and Complaint and Order to Show Cause;
5. Order to Show Cause dated May 10, 2024;
6. Affirmation in Opposition of Patrick Mckeage dated June 25, 2024 with Exhibits A-O;
7. Respondents' Memorandum of Law in Opposition to Petitioners' Motion for a Preliminary Injunction and in Support of Respondents' Motion to Dismiss;
8. Notice of Motion of respondents dated June 25, 2024;
9. Respondents' Memorandum of Law in Opposition to Petitioners' Motion for a Preliminary Injunction and in Support of Respondents' Motion to Dismiss;
10. Reply Affirmation of Thomas G. Spanos, Esq. dated July 3, 2024 with Exhibits A-H;
11. Petitioners' Reply Memorandum of Law in Further Support of Petition and Complaint and Order to Show Cause and in Opposition to Respondents' Motion to Dismiss.